**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RODNEY FOURA**, | **Case No. 5:19-cv-00394-JDW** |
| *Plaintiff,* | |
| v. | |
| **NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK,** | |
| *Defendant.* | |

## <u>MEMORANDUM</u>

Rodney Foura made a fateful choice on August 16, 2017. He wore a bulletproof vest to work, ostensibly because he was afraid of a co-worker with whom he had an altercation a week earlier. The result of that choice was predictable. Co-workers were distressed, and Mr. Foura faced discipline. He now claims that the discipline he faced was actually his employer, Amtrak, retaliating against him for reporting a workplace altercation a week earlier. He does not have the evidence to make his case, though. Instead, the evidence shows that Amtrak started investigating him after he wore body armor to work, and Amtrak disciplined him for that decision. The Court will grant Amtrak's summary judgment motion.

## I.    FACTUAL BACKGROUND

### A.    Mr. Foura's Workplace Altercation

Amtrak employed Mr. Foura as a C&S Foreman in Amtrak's Maintenance Shops in Lancaster, Pennsylvania. On August 9, 2017, Mr. Foura and his supervisor, James Jefferson, had a physical and verbal altercation.  According to Mr. Foura, during that argument, Mr. Jefferson

charged at him, ran into him, and knocked him backwards. Then, Mr. Jefferson wrapped his arms around Mr. Foura and led Mr. Foura to his office.

On August 9, Mr. Foura and Mr. Jefferson met with the Lancaster Shop Manager David Lerch to discuss the altercation. Then, on August 10, 2017, Mr. Foura submitted a workplace violence report to Lancaster Shop Manager David Lerch concerning the altercation. But according to Mr. Foura, Amtrak did not take any action against Mr. Jefferson, in the form of discipline or counseling. Following the altercation, Mr. Jefferson cut Mr. Foura out of overtime.

### B.    Mr. Foura Wore A Bulletproof Vest To Work

All was quiet for Mr. Foura between August 11 and August 15, 2017. On August 16, 2017, Mr. Foura wore a bulletproof work vest to work under his sweatshirt. Another Amtrak Employee at the Lancaster Maintenance Shops, Patrick Gibson, observed Mr. Foura wearing the vest and, fearing for his safety, reported this observation to Mr. Jefferson. Mr. Jefferson reported this to Mr. Lerch, who called Amtrak Police. When the officers arrived and observed Mr. Foura's bulletproof vest, they removed him from the shop floor. Mr. Foura admitted he was wearing a bulletproof vest and told the officers he was doing so because he didn't trust Mr. Jefferson. Mr. Foura acknowledged that Mr. Jefferson had not threatened him since the altercation a week before.

### C.    Disciplinary Proceedings Leading To Mr. Foura's Termination

Mr. Lerch removed Mr. Foura from service on August 16, 2017, based on the recommendation of the Amtrak Police. On September 5, 2017, Amtrak Charging Officer Susan Obey issued Mr. Foura a Notice of Investigation, charging him with violating Amtrak's Standards of Excellence and Workplace Violence Policy for wearing a bulletproof vest into the workplace on August 16, 2017. The charges were based on the fact that the bulletproof vest made fellow

Amtrak employee's feel "threatened, intimidated and distracted, fearing for their safety." (ECF No. 36-15, Ex. K.)

On November 6, 2017, Mr. Foura appeared for a disciplinary hearing before a Hearing Officer. Mr. Foura's union represented him and argued that Mr. Foura was justified in wearing a bulletproof vest based on Mr. Jefferson's previous behavior. On November 16, 2017, the hearing officer issued a Decision Letter finding that the charges against Mr. Foura were proven by the evidence presented at the hearing. On November 17, 2017, Nick Croce, Amtrak Senior Manager – Engineering, issued a letter to Mr. Foura terminating his employment.

Mr. Foura appealed his termination. Amtrak reinstated him on April 17, 2018. The Reinstatement Agreement, which Mr. Foura signed, states that the disciplinary record demonstrated all charges against him were proven and were terminable offenses, and the disciplinary process possessed no procedural defects.

### D.    Procedural Background

On January 24, 2018, Mr. Foura filed a Complaint *pro se* against Amtrak with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") under the whistleblower provisions of FRSA, 49 U.S.C. § 20109. On January 24, 2019, after OSHA's Regional Investigator did not issue a decision on his OSHA Complaint in 210 days, Mr. Foura filed this case. Mr. Foura alleges he was terminated for "making complaints regarding safety and security conditions on his job" in violation of § 20109(b)(1)(A). (ECF No. 1, p. 10, ¶¶ 47-48.) Amtrak has moved for summary judgment on Mr. Foura's claims against it.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citation omitted).

## III.    ANALYSIS

Under the whistleblower provision of the Federal Rail Safety Act, a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to various protected activities. *See* 49 U.S.C. § 20109(a). Protected activities under the FRSA include reporting a rule violation relating to railroad safety or security to a supervisor. *See* 49 U.S.C. § 20109(a)(1)(C).

The rules and procedure applicable to Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21") whistleblower cases govern FRSA retaliation claims. *See Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d. Cir. 2013); 49 U.S.C § 20109(d)(2)(A). "Under AIR-21, an employee must show, by a preponderance of the evidence, that (1) she engaged

4

in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Araujo,* 708 F.3d at 157 (footnote and citation omitted). Once the plaintiff makes a prima facie case, "the burden shifts to the employer to demonstrate by clear and convincing evidence, the employer would have taken the same unfavorable personnel action in the absence of that behavior." *Id*;; *see also* 49 U.S.C § 42121(b)(2)(B)(ii). Amtrak disputes that Mr. Foura engaged in a protected activity and that that activity was a contributing factor in its decision to terminate Mr. Foura.

### A.     Mr. Foura Engaged In A Protected Activity

The FRSA protects reports to a supervisor of rule violations relating to railroad safety or security to a supervisor. *See* 49 U.S.C. § 20109(a)(1)(C). "Reporting, in good faith, a hazardous safety or security condition" is also protected. § 20109(b)(1)(A). Mr. Foura's report to his supervisor, Mr. Lerch, regarding the August 9th altercation with Mr. Jefferson, was a protected act under § 20109(a)(1)(C) and § 20109(b)(1)(A). Mr. Foura was reporting to his supervisor Mr. Jefferson's rule violation, which Mr. Foura believed to be a hazardous safety condition. Amtrak contends that Mr. Foura was not reasonable in filing the report. However, the facts, taken in the light most favorable to Mr. Foura, show that he acted reasonably and in good faith.

### B.     The Protected Activity Was Not A Contributing Factor In Mr. Foura's Termination

A "contributing factor" means "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Araujo*, 708 F.3d at 158 (citing *Marano v. Dep't of Justice*, 2 F. 3d 1137, 1140 (Fed. Cir. 1993)). In the Third Circuit, an employee is not required to show any retaliatory motive for the adverse employment action. *Id.* at 161. Circumstantial evidence can satisfy the contributing factor element to establish a prima facie

retaliation case. See *id.* "Temporal proximity between the employee's engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected activity was a contributing factor to the adverse employment action." *Id.* at 160 (citation omitted). However, the Third Circuit has held that a "legitimate intervening event" will break any causal connection to satisfy a "contributing factor" prong in an AIR-21 analysis. *Wiest*, 812 F. 3d at 330-32.

Mr. Foura argues that only seven days separate his report of workplace violence and him being taken out of service. Thus, he argues, this evidence demonstrates the temporal proximity between the report and his dismissal. But Mr. Foura wore a bulletproof vest to work on August 16. That was a legitimate intervening event that broke any suggestion of causation that arose from the temporal proximity.

Mr. Foura also claims that Amtrak applied its policy differently to him than it did to Mr. Jefferson after the alteration between the two and that the differential treatment evidences Amtrak's retaliation against him. This argument fails because Mr. Jefferson was not similarly situated. *See Wilcher v. Postmaster Gen.,* 441 F. App'x 879, 881-81 (3d Cir. 2011). Neither Mr. Jefferson faced discipline for the altercation. Instead, Mr. Foura faced discipline for wearing body armor to work. Mr. Jefferson did not commit a similar offense.

Mr. Foura also claims that Mr. Jefferson was generally antagonistic towards him. There are two problems with that argument, however. First, the evidence he provides only demonstrates antagonism prior to Mr. Foura's protected activity, not as a result of the protected activity. It therefore does not aid his case of retaliation. Second, Mr. Jefferson did not decide to terminate Mr. Foura, nor were his actions the proximate cause of Mr. Foura's termination. His antagonism therefore does not provide even circumstantial evidence as to Amtrak's reason for terminating Mr.

6

Foura. *See Abramson v. William Patterson Coll. of N.J.,* 260 F.3d 265, 286 (3d Cir. 2001); *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).

Mr. Foura also argues that Amtrak's justification for disciplining him was a pretext. To support that argument, Mr. Foura claims that the charges against him were inconsistent with the facts of the case and the punishment was harsh. These arguments are not sufficient to show pretext. The Eighth Circuit has held that under a FRSA claim, "[t]he critical inquiry in a pretext analysis is … whether the employer in good faith believed that that the employee was guilty of the conduct justifying discharge." *Gunderson v. BNSF Railway Co.*, 850 F.3d 962, 969 (8th Cir. 2017) (citation omitted). The Third Circuit has not addressed a pretext claim under the FRSA. In the discrimination context, the Third Circuit has held to show pretext, "the plaintiff must point to some evidence, director or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminator reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013).

Mr. Foura cannot satisfy either of these tests. There is no dispute in this case that Mr. Foura wore body armor to work or that Amtrak believed that doing so justified termination. In addition, Mr. Foura has not offered any evidence that calls into question Amtrak's reason for his termination, nor has he offered evidence to suggest that retaliation was more likely than not a motivating factor in his termination.

Finally, Mr. Foura argues that his protected activity and termination are "inextricably intertwined," creating a presumptive inference of causation. He points to the fact that his investigative hearing focused on both his altercation with Mr. Jefferson and his wearing body

armor at work a week later. and the August 16th body armor event. According to Mr. Foura, the hearing officer found against him at least in part based on the altercation.

These arguments miss the mark. It doesn't matter if the altercation is "inextricably intertwined" with Mr. Foura's termination. The altercation is not a protected activity under the FRSA. The protected activity was Mr. Foura's ***reporting*** of the event to his supervisor.  Mr. Foura's report of the altercation and his subsequent termination were distinct events, not one continuous chain. Amtrak's investigation of Mr. Foura's conduct began after he wore body armor to work, not when he reported Mr. Jefferson's conduct. In addition, the disciplinary hearing focused on whether the vest distracted and instilled fear in his coworkers. Mr. Foura discussed his altercation with Mr. Jefferson to explain why he felt he was justified to wear the body armor to work. The altercation itself was not actually at issue during the disciplinary hearing.

## IV.    CONCLUSION

Actions have consequences. Mr. Foura chose to wear a bulletproof vest to work. In this day and age, he should have known that doing so carried a risk of disciplinary action. He has not mustered evidence to show that Amtrak's response was anything other than a normal employer's response to conduct that created an elevated risk of workplace violence. The Court will therefore grant Amtrak's motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 16, 2020